## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
## FORT WAYNE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Cause No. 1:19-CR-62-HAB |
| | ) | |
| VORHEESE D. ZANDERS | ) | |

### OPINION AND ORDER

Defendant has pleaded guilty to trafficking fentanyl and possessing a firearm while doing so. After initially lodging twelve pages of objections to the PSR (ECF No. 87), Defendant now presents a single issue: whether the PSR properly assesses a two-level enhancement under U.S.S.G. § 3B1.1 for his role in the offense. The Court held an evidentiary hearing on the objection in December 2023. The parties have now briefed the issue (ECF Nos. 132, 133) and it is ripe for ruling.

### I.      Factual Background

Almost everything the Court knows about Defendant's drug trafficking comes from Curtis Bryant ("Bryant"). Bryant is Defendant's stepbrother. Officers searched Bryant's residence in March 2018, finding more than 200 grams of fentanyl, several firearms, $12,000.00 in cash, and drug paraphernalia. Bryant pleaded guilty to drug and gun charges and agreed to cooperate against Defendant and others. Bryant testified in the evidentiary hearing here and an evidentiary hearing in the Government's prosecution of Anthony Henderson in Cause No. 1:18-CR-24-HAB ("Henderson Case"). For that testimony, Bryant expects to receive a considerable sentencing break.

In early 2017, Bryant found himself a broke college graduate, struggling to pay his student loans. Bryant opened Snapchat and saw Defendant showing off large amounts of cash. Bryant reached out to Defendant to learn how he could make money. Defendant told Bryant that he had

been selling fentanyl—"dog food" as Defendant called it. Bryant was interested and agreed to come to Fort Wayne from Detroit to learn the drug trade.

Bryant first came to Fort Wayne for a weekend in April 2017. He observed Defendant, learning to use a scale, package drugs, what to charge, and how to avoid suspicion. He also took over Defendant's drug dealing for a short period, answering Defendant's phone and selling drugs to Defendant's customers at a price set by Defendant.

Bryant returned to the Fort Wayne drug trafficking scene full-time in July 2017. By this time, Defendant and other members of the "Thrust Godz" were selling drugs out of local motel rooms rented by the customers. When traffic in and out of the motels became too noticeable, the group moved their retail sales to several drug houses.

As this Court found in the Henderson Case, the Thrust Godz were not your ordinary drug trafficking organization. Each member had his own customers, was responsible for his or her own money, and obtained the drugs (largely from Defendant) needed to make their sales. There was little coordination between the members and no pooling of profits. Each member was "effectively his own independent drug contractor." *United States v. Henderson*, Cause No. 1:18-CR-24-HAB, ECF No. 111 at 7 (N.D. Ind. Nov. 23, 2020).

Bryant has given different accounts of the leadership model of the Thrust Godz. In the Henderson Case, Bryant testified that Defendant was the group's leader. Bryant did not disavow that testimony here, but said he needed to provide "context." He now testified that Defendant was the leader only in that Defendant had the most fentanyl. Defendant was also the person responsible for obtaining the fentanyl for the group; neither Bryant nor any other group member knew Defendant's supplier. But he clarified that Defendant did not control the activities of the other members. Defendant could not "reward," "punish," or "sanction" any of the members.

The situation changed in October 2017 when Defendant was arrested by state law enforcement. The group bonded Defendant out of custody and met at one of the distribution houses to discuss next steps. After that meeting, Defendant approached Bryant and asked Bryant to "take [Defendant's] spot" because Defendant needed to lay low. Bryant agreed. From that point on, Bryant assumed control over the group's fentanyl stash. He oversaw supplying the group with fentanyl as needed and collected money from the members as the wholesale distributor, although members would first contact Defendant, who would then direct Bryant where to deliver the fentanyl. As Defendant concedes, the money from the wholesale distributions was "always [Defendant's] money because the fentanyl was always paid for by the others upfront." (ECF No. 133 at 7).

Along with taking over the fentanyl stash, Bryant also took over Defendant's retail drug sales. Defendant's customers would still contact Defendant directly, but Defendant would then contact Bryant to tell him how much fentanyl to deliver to whom and at what price. Bryant testified that he and Defendant were "equal partners" during this time and shared the profits earned from Defendant's retail sales.

In December 2017, Defendant returned to Fort Wayne and resumed his retail sales. While Bryant no longer made Defendant's sales, he kept the fentanyl stash and continued to dole it out to group members.

## II.    Legal Analysis

United States Sentencing Guideline Section 3B1.1 provides, "If the defendant was an organizer, leader, manager, or supervisor in any criminal activity . . . increase [the offense level] by 2 levels." U.S.S.G. § 3B1.1(c). The commentary provides guidance in applying the

enhancement. To qualify, a defendant "must have been the organizer, leader, manager, or supervisor of one or more other participants." *Id*., cmt. 2.

The Court can consider several factors in determining whether a defendant qualifies for the enhancement, including "the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others." *Id*., cmt. 4. In groups like the Thrust Godz, "the distinction between organization and leadership, and that of management or supervision, is of less significance than in larger enterprises that tend to have clearly delineated divisions of responsibility." *Id*. The Government bears the burden of showing that the enhancement applies by a preponderance of the evidence. *United States v. Cortina*, 733 F. Supp. 1195, 1199 (N.D. Ill. 1990).

The Government puts forward two arguments in support of the enhancement. First, it notes that Defendant "supplied fentanyl to Bryant and the other Thrust Godz throughout their drug trafficking in Fort Wayne." (ECF No. 132 at 12). But as Defendant notes, "[s]upplying drugs and negotiating the terms of their sale do not by themselves justify a Section 3B1.1 increase." *United States v. Vargas*, 16 F.3d 155, 160 (7th Cir. 1994). In *Vargas*, the Seventh Circuit held that the "ability to supply cocaine . . ., to sell it on credit, and to negotiate its price" did not place that defendant in the role of a manager or supervisor. *Id*. *Vargas* is on-point and precludes an enhancement based on Defendant's role as the drug supplier.

But not all is lost for the Government. It's second argument relates to the period from October to December 2017 when Bryant serviced Defendant's retail customers. Defendant

describes the relationship during this period as an "equal partnership," (ECF No. 133 at 12) but the Court cannot agree.

Although "some hierarchy among those involved in the criminal activity must exist" for the enhancement to apply, *United States v. Weaver*, 716 F.3d 439, 444 (7th Cir. 2013), the Government need not show that Defendant was "ordering around" another participant to establish this hierarchy. Instead, it is sufficient that Defendant was "[o]rchestrating or coordinating activities performed by others," *United States v. Martinez*, 520 F.3d 749, 752 (7th Cir. 2008), or "delegat[ing] delivery or payment tasks" in connection with drug transactions. *United States v. Sainz-Preciado*, 566 F.3d 708, 714 (7th Cir. 2009).

The evidence shows that Defendant was directing the actions of Bryant in a way that supports the enhancement. From October to December 2017, Bryant sold fentanyl to Defendant's customers at Defendant's clear direction. Defendant told Bryant how much fentanyl to deliver and to whom. Defendant set the price. Defendant coordinated Bryant's activities, delegating delivery tasks. That's enough for the two-level enhancement. *See United States v. Tate*, --- F.4th ---, 2024 WL 1432883, at *5-6 (7th Cir. Apr. 3, 2024) (text messages directing another individual to bring drugs to a customer supported enhancement).

The Court concedes that this is a close call. Defendant did not exert the kind of control over the Thrust Godz that the Court usually sees when § 3B1.1 is applied. But what he did was enough, and the enhancement was properly applied.

**III.    Conclusion**

For these reasons, Defendant's objection to the two-level enhancement under § 3B1.1 is OVERRULED. The Court will set a sentencing date by separate order.

SO ORDERED on April 15, 2024.

s/ *Holly A. Brady*
CHIEF JUDGE HOLLY A. BRADY
UNITED STATES DISTRICT COURT